UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:15-CV-00026-GNS-HBB

JOHN WAYNE COLLINS                                                              PETITIONER

v.

KATHY LITTERAL, Warden                                                          RESPONDENT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the objections of both Petitioner (DN 37) and Respondent (DN 34) to the Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation ("R. & R.") (DN 33). For the following reasons, the R. & R. is **ADOPTED** to the extent not inconsistent with this opinion, and all objections are **OVERRULED**. Petitioner's Petition for Writ of Habeas Corpus (DN 1) is **DISMISSED**. A limited Certificate of Appealability is **GRANTED** as to Ground One, but **DENIED** as to Petitioner's remaining claims.

I.  **BACKGROUND**

The Kentucky Supreme Court summarized the events leading to Petitioner John Wayne Collins' ("Petitioner" or "Appellant") conviction and subsequent pending petition for habeas corpus as follows:

> On October 10, 2004, Appellant and his girlfriend, Christa Wilson, were visiting Appellant's father, Harold Wayne Collins, and then-stepmother, April Sizemore Collins. Another friend, Natasha Saylor, was also present. Everyone was on the porch of the home, visiting and drinking, when Stevie Collins pulled into the driveway, exited his vehicle and approached the porch. Stevie Collins extended an invitation for them to accompany him to church, and Appellant's father invited Stevie into the house. Appellant's father then shot Stevie in the face, whereupon

Stevie fell to the floor and began pleading for his life. Appellant told his father that they could not let Stevie leave there. Appellant's father agreed and instructed Appellant to finish the job. Appellant retrieved his own gun and shot Stevie seven or eight times more, killing Stevie. A possible explanation for Stevie Collins's murder was revealed at trial when witnesses, including Appellant's uncle, Joe B. Collins, testified that his brother, Appellant's developmentally disabled uncle, had been murdered and dismembered in 1997, and that it was believed that Stevie Collins was responsible for the uncle's murder. After the shooting, the group left in three different vehicles and met up again at a relative's house in Henry County, where they continued to drink and sleep.

Meanwhile, police were dispatched to the murder scene. Kentucky State Police Sergeant, John Yates, one of the investigating officers, testified that one 9mm round was discovered on the front porch and eight SKS rounds were found in the yard on either side of the porch. Later, when Appellant's father was arrested, a 9mm handgun was retrieved from his vehicle. Ammunition fitting the description of the ammunition retrieved from Stevie Collins's body was found in Appellant's vehicle. However, lab results on the weapons were inconclusive.

Although Appellant's girlfriend, Christa Wilson, Appellant's stepmother, April Sizemore Collins, and Natasha Saylor all repeatedly denied any knowledge of Stevie Collins's murder during the initial police investigation, both Natasha and April testified at trial to a substantially similar version of events, consistent with the factual summary set out hereinabove. Both also testified that they initially lied to the police because they had been threatened not to speak of Stevie Collins's shooting. April had been threatened by her then-husband, Appellant's father, while Natasha had been threatened by both Appellant and his father.

Forty days after Stevie Collins was murdered, the body of Christa Wilson was found face down in a creek. She died from a gunshot wound to the head. Christa had last been seen with Appellant. Paint that was discovered on a rock near Christa's body appeared to have been the result of a vehicle scraping the rock, and Appellant's vehicle appeared to have been damaged in the rear bumper area. A sample of the paint was compared with a paint sample taken from Appellant's vehicle, the one he was driving when Christa was last seen with him. At trial, a forensic science specialist for the Kentucky State Police (KSP) and a defense expert witness testified concerning the results. The KSP specialist testified that the paint layer from the rock sample was identical to the paint layer from Appellant's vehicle in all areas, i.e., color, type, structure, texture, and elemental composition. The defense expert testified that the substrata of the paint samples differed in thickness and that the bottom layer did not match. For this reason, the defense expert disagreed that the paint samples were identical, but he did admit that the paint samples were extremely similar. Further, the defense expert explained that paint layer thickness varies across each vehicle and, in fact, two samples taken from Appellant's vehicle varied in thickness. He also testified that

> the difference in substrates could be the result of previous repairs made to the vehicle.
>
> Ultimately, Appellant was tried and convicted for both the murder of Stevie Collins and the murder of Christa Wilson. Appellant had, initially, been indicted for Stevie Collins's murder. While Appellant was awaiting trial on that charge, he was indicted for the kidnapping and murder of Christa Wilson. As a jury was being selected for the Stevie Collins's murder, the Commonwealth moved to consolidate the two cases. Over Appellant's objection, the trial court granted consolidation, but gave Appellant a continuance. The Commonwealth filed a notice of intent to seek the death penalty based upon intentional killing and multiple deaths. Subsequently, Appellant moved to sever the offenses, arguing that his option to testify at trial was compromised by joinder given his conflicting theories of defense. The trial court denied the motion, concluding that evidence in each case would presumably be admissible in the other. As stated above, when an impartial jury could not be seated in Clay County, the case was transferred to the Warren Circuit Court. Appellant renewed his motion to sever after transfer, but the Warren Circuit Court also concluded that joinder was appropriate, and denied the motion to sever.

*Collins v. Commonwealth*, No. 2008-SC-000107-MR, 2010 WL 2471839, at *1-2 (Ky. Nov. 18, 2010).[1] Petitioner was convicted at trial and sentenced to life without parole for a minimum of twenty-five years on each of the two counts. (Resp't's Answer Attach. 3, at 25-28, DN 26-3). The Kentucky Supreme Court affirmed on direct appeal by a 4-3 margin. *Collins*, 2010 WL 2471839, at *1, *7. After he sought relief under Ky. R. Crim. P. 11.42, the Kentucky Court of Appeals affirmed the Warren Circuit Court's decision. *Collins v. Commonwealth*, No. 2011-CA-002105-MR, 2013 WL 2257673 (Ky. App. May 24, 2013). The Kentucky Supreme Court denied Petitioner's motion for discretionary review. (Resp't's Answer Attach. 6, at 138, DN 26-6).

Petitioner filed a Petition for Habeas Corpus in this Court on six grounds. (Pet. Writ Habeas Corpus, DN 1 [hereinafter Pet.]). First, Petitioner argued that his Fifth, Sixth, and Fourteenth Amendment rights were violated by the trial court's joinder of the two murder counts and denial of his subsequent motions to sever. (Pet. 5). Second, Petitioner alleged his

---

[1] These facts receive a presumption of correctness pursuant to 28 U.S.C. § 2254(e)(1).

Fourteenth Amendment rights were violated when the trial court refused to grant a mistrial following testimony from Commonwealth witness Natasha Saylor ("Saylor") regarding her assault. (Pet. 6). Third, Petitioner claimed he was denied his Fourteenth Amendment right to due process when the trial court allowed the Commonwealth to elicit prejudicial hearsay statements during the testimony of April Collins. (Pet. 6). Fourth, Petitioner argued that his Fourteenth Amendment due process rights were violated when the trial court permitted a testifying witness for the Commonwealth to remain in the courtroom during all testimony, "permitting her to clean up the Commonwealth's case by refuting the defense theory of justification/defense." (Pet. 7). Fifth, Petitioner alleged he was denied his Sixth Amendment rights because the Commonwealth's opening statement included reference to Harold Collins' statements regarding his invocation of the right to remain silent and request for an attorney, and Petitioner's counsel's failure to object further denied Petitioner his Sixth Amendment rights. (Pet. 7). Sixth and finally, Petitioner claimed that his Sixth and Fourteenth Amendment rights were violated when the Commonwealth introduced hearsay statements of Harold Collins through the testimony of Detective Yates, and Petitioner's counsel's failure to object further denied Petitioner his Sixth Amendment rights. (Pet. 9). On November 14, 2017, Magistrate Judge Brennenstuhl issued an R. & R. recommending dismissal of Petitioner's Petition on the merits of each of Petitioner's claims, and recommending the issuance of a limited certificate of appealability as to Ground One, but denying the same as to the remaining five claims. (R. & R. 27, DN 33).

## II. JURISDICTION

This Court has jurisdiction to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court" pursuant to 28 U.S.C. § 2254(a).

## III. STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), applies to all habeas corpus petitions filed after April 24, 1996, and requires "heightened respect" for legal and factual determinations made by state courts. *See Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). Section 2254(d), as amended by AEDPA, provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

This is a "difficult to meet and highly deferential standard . . . ." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks omitted) (internal citation omitted) (citation omitted). Legal conclusions made by state courts are also given substantial deference under AEDPA. The Supreme Court has concluded that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents."

*Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013) (per curiam) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).

When reviewing a magistrate judge's report and recommendation regarding a prisoner's petition for a writ of habeas corpus, "[a] judge . . . shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections "wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act." *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991); *see also Manigaulte v. C.W. Post of Long Island Univ.*, 659 F. Supp. 2d 367, 372 (E.D.N.Y. 2009) ("[W]hen a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." (internal quotation marks omitted) (citation omitted)). New arguments raised for the first time in a petitioner's objection to a magistrate judge's report and recommendation are considered waived. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000). Courts have applied this general rule in the habeas corpus context. *See Brewer v. Bottom*, No. 10-26-KSF, 2012 WL 404878, at *8 (E.D. Ky. Feb. 8, 2012) (rejecting petitioner's claim in habeas petition raised for the first time in objections to the report and recommendation and noting that "[t]hese reasons alone are sufficient grounds to reject [the petitioner's] objection.").

### IV. DISCUSSION

Petitioner and Respondent have both filed objections to the R. & R. (Resp't's Obj., DN 34; Pet'r's Obj., DN 37). Each is addressed below.

A.   <u>**Respondent's Objection**</u>

The substituted Respondent, Kathy Litteral ("Respondent"), objects to the R. & R.'s recommendation that a certificate of appealability issue as to Ground One of the Petition. (Resp't's Obj. 1-7). The Respondent argues that the issue is not addressed by clearly established Supreme Court precedent applicable to state court trials, and Petitioner's habeas petition must therefore fail. (Resp't's Obj. 2-3). This attempt at a merits argument as to Ground One misunderstands the standard for the issuance of a certificate of appealability, which is simply whether reasonable jurists could find the Court's assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As discussed in the R. & R., the fact that the Kentucky Supreme Court was narrowly split on this issue demonstrates that reasonable jurists can and did disagree, and that a limited certificate of appealability should thus issue. Respondent's objection is therefore overruled.

B.   <u>**Petitioner's Objection**</u>

Petitioner objects on a number of grounds, each of which is addressed in turn.

1.   **Simmons *and* Lane**

First, Petitioner objects that the Kentucky Supreme Court opinion and R. & R. failed to consider his joinder claim under *Simmons v. United States*, 390 U.S. 377 (1968). (Pet'r's Obj. 1-6). Petitioner argues that the R. & R.'s use of *United States v. Lane*, 474 U.S. 438 (1986), for its analysis was an error of law, given that the Kentucky Supreme Court's ruling relied not on *Lane*, but on circuit court precedent which he contends is "contrary to and involving an unreasonable application of clearly established federal law" under *Kernan v. Cuero*, 138 S. Ct. 4, 9 (2017). (Pet'r's Obj. 3).

7

As the R. & R. quoted, the Kentucky Supreme Court's opinion addressed Petitioner's related joinder and severance arguments as follows:

> Throughout these proceedings, Appellant has argued a particular manner in which he was prejudiced by joinder of the charges; namely, that his right to testify in his own defense was compromised. While Appellant wished to testify in support of his claim of justification for Stevie Collins's murder, he wanted to invoke his privilege not to testify in Christa Wilson's murder. This issue has not been much addressed in our cases. The federal courts, however, under their similar rules of joinder and severance, have noted that, while courts zealously guard a defendant's Fifth Amendment right not to testify at all, "the case law is less protective of a defendant's right to testify selectively." *United States v. Fenton*, 367 F.3d 14, 22 (1st Cir. 2004). A defendant who argues for severance on the basis of selective testimony "must make a 'persuasive and detailed showing regarding the testimony he would give on the one count he wishes severed and the reason he cannot testify on the other counts.'" *United States v. McCarther*, 596 F.3d 438, 443 (8th Cir. 2010) (quoting *United States v. Possick*, 849 F.2d 332, 338 (8th Cir. 1988)). The United States Circuit Court for the Sixth Circuit has held that severance is not required unless the defendant "'makes a convincing showing that he has both important testimony to give concerning one count and a strong need to refrain from testifying on the other.'" *United States v. Bowker*, 372 F.3d 365, 385 (6th Cir. 2004), vacated on other grounds, 543 U.S. 1182, 125 S. Ct. 1420, 161 L.Ed.2d 181 (2005) (quoting *United States v. Martin*, 18 F.3d 1515, 1518-19 (10th Cir. 1994)). Otherwise, "severance would be available to a defendant virtually on demand." *Fenton*, 367 F.3d at 23.
>
> This Court reached a similar conclusion in *Owens v. Commonwealth*, 572 S.W.2d 415, 416 (Ky. 1977):
>
>> [Defendant] argues that he was confounded in his defense for the reason he wished to testify as to one charge, but not the others. . . . This argument in the absence of other compelling factors ordinarily is not sufficient to warrant a severance. Otherwise, it would have the effect of nullifying the provisions of RCr 9.12, consolidation of offenses for trial.
>
> Here, Appellant has not made a persuasive and detailed showing of "compelling factors" that would justify his selective testimony. He has not shown that his testimony regarding Stevie Collins's murder was vital, as he was able to assert his justification defense through other witnesses who testified to the victim's alleged involvement in the murder of Appellant's uncle. And he has made no showing of a strong need to refrain from testifying with respect to Christa's murder. *See, e.g.*, *Bowker*, *supra*, and *McCarther*, *supra*. The trial court did not abuse its discretion, therefore, by denying Appellant's severance motion on the ground of selective testimony.

> Nor was severance required on the ground that the two murders were not sufficiently related. A primary test for determining whether undue prejudice will result from a joinder of offenses is whether evidence necessary to prove one offense would be admissible in a trial of the other offense. *Roark v. Commonwealth*, [90 S.W.3d 24 (Ky. 2002)]. As noted, a trial court's decision to join offenses related in this way will not be disturbed absent an abuse of discretion. *Debruler v. Commonwealth*, [231 S.W.3d 752 (Ky. 2007)]; *Roark, supra*. We agree with the Commonwealth that there was no abuse of discretion here, because the two murders were based on "transactions connected together." RCr 6.18.1. Clearly, evidence of Stevie Collins's murder would have been admissible in a separate trial of Christa Wilson's murder, since the alleged motive for the second murder was Appellant's desire to cover up the first murder by eliminating one who had witnessed it. KRE 404(b) (evidence of other bad acts is admissible to prove motive); *Tucker v. Commonwealth*, 916 S.W.2d 181 (Ky. 1996) (evidence that defendant had shot a witness of a prior crime was admissible to show that charged shooting was similarly motivated.). Similarly, evidence of Christa's murder would have been admissible in a separate trial of Stevie Collins's murder, since evidence that one has attempted to cover up a crime is circumstantial proof of one's consciousness of guilt regarding that crime. KRE 404(b) (evidence of other bad acts is admissible to prove intent.); *Major v. Commonwealth*, 177 S.W.3d 700 (Ky. 2005) (evidence that defendant beat a potential witness was admissible as proof of consciousness of guilt.); *Foley v. Commonwealth*, 942 S.W.2d 876, 887 (Ky. 1996) ("Any attempt to suppress a witness' testimony . . . is evidence tending to show [a consciousness of] guilt."). The trial court did not abuse its discretion, therefore, by deeming the two murders sufficiently related to be tried together.

*Collins*, 2010 WL 2471839, at *3-4.

The R. & R. used *Lane* to analyze whether the joinder of Petitioner's two charges created prejudice so substantial as to deny Petitioner a fair trial under the Fifth Amendment. (R. & R. 9-14). The Magistrate Judge concluded that Petitioner "failed to make the particularized showing of prejudice required to succeed on this claim[,]" and recommended denying the claim, but to issue a limited certificate of appealability on the issue, given the divided Kentucky Supreme Court opinion on the matter. (R. & R. 13-14).

Petitioner's argument that *Simmons* was the correct standard rather than *Lane* is unfounded. *Lane* represents the proper Supreme Court precedent under which to analyze the

precise joinder question presented in Petitioner's case, and the Magistrate Judge correctly undertook the harmless error analysis provided in *Lane* to determine whether any reversible error took place. (R. & R. 10-13). Petitioner's remaining objection that the Kentucky Supreme Court relied on circuit court precedent rather than *Lane* is likewise unavailing because the "failure to cite specific Supreme Court precedent does not itself render an opinion contrary to or an unreasonable application of clearly established federal law[,]" and the Kentucky Supreme Court's reasoning was consistent with *Lane*'s harmless error standard. (R. & R. 10-11 (citing *Early v. Packer*, 537 U.S. 3, 8 (2002))). The Court agrees that Petitioner failed to make the particularized showing of prejudice required to succeed on this claim, as the Sixth Circuit has rejected the claim that the cumulative effect of multiple charges may have led to his guilty verdict as to Christa Wilson's murder, and even the dissenting justices in Petitioner's appeal found the evidence sufficient to support Petitioner's conviction. (R. & R. 13 (citing *United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005))). Petitioner's first objection is therefore overruled.

2. **Maricle** *Detention Hearing*

Petitioner next objects that the Magistrate Judge made an error of law by refusing to take judicial notice of a detention hearing transcript ("DHT") relating to a conspiracy he alleges occurred involving the judge who granted joinder of his trials. (Pet'r's Obj. 6-10).[2] The Court has reviewed the statements in the DHT cited by Petitioner, but does not agree that an evidentiary hearing is necessary under 28 U.S.C. § 2254(e)(2). Tr. Detention Hr'g, *United States v. Maricle*, No. 6:09-CR-00016-KKC-REW-1, DN 170. Even given the statements made and

---

[2] Petitioner failed to include such a transcript in the record before the Court. Petitioner stated that he "cannot attach a complete copy . . . of the DHT in *U.S. v. Miracle* [sic], [but] he cordially invites this Court, as he did the Sixth Circuit to read the entire DHT . . . ." (Pet'r's Reply Resp't's Answer 35, DN 31). The reason for his failure to attach the transcript is unclear.

assuming the truth of the conclusions Petitioner has drawn, the Magistrate Judge made a full merits analysis of the interrelated constitutional questions Petitioner raised regarding joinder and severance, and found no objectively unreasonable application of clearly established federal law. (R. & R. 7-14). Petitioner's assertions regarding the alleged corruption of Judge Maricle—who ordered joinder of Petitioner's cases, but was replaced by the time Petitioner's motions for severance were considered—do not impact the validity of that analysis.

### 3. *Limited Certificate of Appealability*

Petitioner further objects that the Magistrate Judge recommended that only a *limited* certificate of appealability issue. (Pet'r's Obj. 10-12). He argues that his earlier argument as to *Simmons* and *Lane* mandates a broader certificate of appealability which encompasses:

1. Whether the Supreme Court decision is contrary to *Simmons* regarding Collins' being forced to make a Hobson's Choice between his Fifth and Sixth Amendment rights by the improper joinder of the two cases.
2. Whether the Supreme Court decision is owed any deference in light of the fact that it stands in contrary to the clearly established law of *Kernan/Glebe* regarding the impermissible use of circuit court precedent.
3. Whether the Supreme Court decision is owed any deference in light of Collins' presentation of [detention hearing transcript] facts from *U.S. v. Miracle* [sic] pursuant to his demand under FRE 201 for those facts to be judicially noticed.
4. Whether in light of the presentation of the facts from the [detention hearing transcript] was Collins entitled to an evidentiary hearing under *Schiro/Paprocki*.

(Pet'r's Obj. 12).

As explained above, each of Petitioner's contentions is unpersuasive, and does not meet the threshold required for a certificate of appealability to issue. *Slack*, 529 U.S. at 484. Petitioner's objection is therefore overruled.

### 4. *Saylor Testimony*

Petitioner again objects to the R. & R.'s use of circuit court precedent, this time as the basis for a merits ruling as to the admission of the Saylor testimony on cross-examination by Petitioner's counsel regarding her assault. (Pet'r's Obj. 13-18). He argues that the Kentucky Supreme Court's decision and R. & R. made light of Saylor's testimony by "dismissing it without consideration of the prejudicial impact it likely had upon the jury as a whole, despite *Chapman* requiring a determination . . . 'whether the error was harmless beyond a reasonable doubt,'" which he contends was not conducted. (Pet'r's Obj. 16 (citing *Chapman v. California*, 386 U.S. 18, 24 (1962))).

Petitioner's argument is unsound, as the alternative to not applying circuit court precedent in this case would be that there is no clearly established federal law under which Petitioner could bring a habeas claim. The R. & R.'s use of Sixth Circuit precedent, including *Zuern v. Tate*, 336 F.3d 478, 485 (6th Cir. 2003), and *United States v. Forrest*, 17 F.3d 916, 921 (6th Cir. 1994), represented a generous interpretation of Petitioner's claim. The Court agrees with the Magistrate Judge's analysis under *Zuern* and *Forest* that Saylor's testimony was unsolicited and took place on defense's cross-examination, that defense counsel declined a limiting instruction, that Petitioner has not presented any evidence of bath faith by the prosecution, and that the testimony was only a small portion of the evidence against Petitioner. (R. & R. 15-16). Petitioner's objection is therefore overruled.

### 5. *April Collins' Testimony*

Petitioner next objects to "any mischaracterization" on page 18 of the R. & R. that April Collins' "testimony was to explain only her initial denials that she had been a witness to the murder." (Pet'r's Obj. 18-19). He argues that her testimony was "directly calculated" to give "'circumstantial support' to the Commonwealth's theory that [Petitioner] had killed Wilson to

12

silence her about the murder," and should have been reviewed under *Crawford v. Washington*, 541 U.S. 36 (2004) and *Chapman* as the applicable clearly established law. (Pet'r's Obj. 19).

In fact, the R. & R. did utilize *Crawford* to analyze this issue, and *Chapman*'s "harmless beyond a reasonable doubt" language is inapplicable, as explained above. (R. & R. 17). Again, the Magistrate Judge's use of Sixth Circuit precedent was undertaken to liberally construe Petitioner's claim, and operated to allow an analysis on the merits rather than foreclosing the claim entirely under AEDPA. The Court agrees with the analysis in the R. & R. under *Anthony v. Dewitt*, 295 F.3d 554, 563 (6th Cir. 2002), that April Collins' testimony was properly admitted and was not an unreasonable application of clearly established federal law. (R. & R. 17-19). Petitioner's objection is thus overruled.

### 6. *Withdrawal of Ground Four*

Petitioner objects that the R. & R. improperly undertook a merits analysis of Ground Four, given that he withdrew the claim in an earlier filing. (Pet'r's Obj. 19-20; Pet'r's Reply 52, DN 31). He argues that this "clearly demonstrates that the Magistrate did not even look at Collins' Reply . . . but elected instead to cut and paste the portion from the Supreme Court decision and add his own inconsequential remarks." (Pet'r's Obj. 19-20). Petitioner asks on this basis that the entire R. & R. be rejected, because the Magistrate Judge "clearly failed to give due consideration to Collins' Reply . . . ." (Pet'r's Obj. 20).

Notwithstanding that the Magistrate Judge liberally construed all of Petitioner's claims to ensure an analysis on the merits of all grounds, the Court also notes that the Magistrate Judge did not elect to strike Petitioner's 69-page reply and order a reply within the limits to be refiled. LR 7.1 ("Replies may not exceed 15 pages without leave of Court."). Although the R. & R.'s analysis of Ground Four was superfluous in light of Petitioner's withdrawal of that claim in his

Reply, the Court finds this to have been a mere oversight which does require the remainder of the R. & R. be rejected. The Court acknowledges Petitioner's withdrawal of his fourth ground in his Petition, but otherwise overrules his objection.

### 7. **Crawford** *and* **Strickland**

Petitioner next objects that the fifth and sixth grounds from his Petition were improperly considered under *Griffin v. California*, 380 U.S. 609 (1965), rather than *Crawford*, and argues that because the Kentucky Court of Appeals never addressed his *Crawford* claim, the R. & R.'s conclusion that Petitioner failed to establish a *Strickland* violation is erroneous. (Pet'r's Obj. 20-29). Petitioner, however, acknowledged the applicability of *Griffin* in his Reply, and cannot alter his position at this stage. (Pet'r's Reply 55, 58); *See Murr*, 200 F.3d at 902 n.1. The Court agrees with the analysis conducted by the Magistrate Judge, and overrules Petitioner's objection.

### 8. *Certificate of Appealability as to Grounds Two, Three, Five, and Six*

Finally, Petitioner requests that a certificate of appealability issue as to his remaining grounds. (Pet'r's Obj. 29-30). The Court, however, agrees with the Magistrate Judge that Petitioner has failed to demonstrate debatable or incorrect conclusions on the merits of Petitioner's claims apart from the limited question in Ground One discussed above. The Court thus overrules Petitioner's objection and denies a certificate of appealability as to Grounds Two, Three, Five, and Six of the Petition.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Respondent's Objection to the Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation (DN 34) is **OVERRULED**;

2. Petitioner's Objection to the Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation (DN 37) is **OVERRULED**;

2. The Magistrate Judge's Findings of Fact, Conclusions of Law, and Recommendation (DN 33) are **ADOPTED** to the extent not inconsistent with this opinion;

3. Petitioner's Petition for Habeas Relief (DN 1) is **DISMISSED**;

4. The issuance of a limited certificate of appealability pursuant to 28 U.S.C. § 2253(c) and Fed. R. App. P. 22(b) is **GRANTED** as to Petitioner's first ground, to allow Petitioner to appeal the issue of whether the trial court's refusal to sever the two charged offenses had a "substantial and injurious effect or influence in determining the jury's verdict" under *Lane*, 474 U.S. at 449. A certificate of appealability is **DENIED** as to Petitioner's remaining arguments.

**Greg N. Stivers, Judge**
**United States District Court**
March 22, 2018

cc: counsel of record
John Wayne Collins, *pro se*